UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL G. REYNA,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br><br>    Defendant. | Case No. 17-cv-07074-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 15, 16 |

Plaintiff Paul G. Reyna seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment, and remands the case for further proceedings.

## I. BACKGROUND

Plaintiff applied for Title XVI disability benefits on June 27, 2013, and Title II benefits on August 5, 2013. (Administrative Record ("AR") 225, 236.) Plaintiff asserted disability beginning June 23, 2013. (AR 225, 237.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. (AR 119, 126.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 144.)

The ALJ considered a number of opinions and medical records in rendering a decision. On August 15, 2011, consultative physician Fariba Vesali, M.D., performed a comprehensive

neurological evaluation. (AR 384-388.) Dr. Vesali noted Plaintiff's medical history for relapsing/remitting multiple sclerosis ("MS"), and Plaintiff's complaints of numbness of the legs and arms that comes and goes, sometimes lasting for an hour. (AR 384.) Plaintiff was observed as having no difficulties picking up a paperclip and getting on and off the exam table, and walked with a normal gait. (AR 385.) Dr. Vesali assessed Plaintiff as having decreased sensation in his entire right lower extremity, and that rotation of the trunk exacerbated low back pain. (AR 387.) Otherwise, Dr. Vesali found no significant focal neurological deficit. Dr. Vesali concluded that Plaintiff's condition would impose limitations for 12 continuous months, and found that Plaintiff could walk and stand for six hours in an eight-hour day with normal breaks, and sit without limitation. (AR 387.) Dr. Vesali also found that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, and could do frequent manipulative activities. (AR 387.)

In February 2013, an MRI showed slight progression of MS plaques at the right posterior corpus callosum, although other areas appeared unchanged. (AR 415.) The new right posterior plaque showed mild restricted diffusion which could be associated with activity. (AR 415.)

On May 10, 2013, Plaintiff reported that he was doing well. (AR 433.) On June 21, 2013, Plaintiff reported an increase in symptoms, including muscle spasms in his legs and difficulty with short-term memory. (AR 436.) Plaintiff also stated that he was having difficulty holding his knife in his job as a butcher, and his wife noticed increased gait instability. (AR 436.) Plaintiff's physical examination had no significant changes, and his cerebellum was intact and gait normal. (AR 436.) On June 28, 2013, Plaintiff reported that he was doing better, and on September 17, 2013, Plaintiff reported that he was doing well. (AR 447, 474.)

On October 22, 2013, consultative neurologist Jeremy Cholfin, M.D., performed a neurological consultation. (AR 478.) Plaintiff stated that he had relapsed several times, with his hands transiently becoming numb, and that he had increased difficulty with his job as a meat manager because he had trouble gripping and holding onto a knife. (AR 478.) Plaintiff also stated that he had trouble with fatigue, particularly later in the day, and that his left leg would drag. Plaintiff noted worsened memory since his diagnosis. (AR 478.) In the physical examination, Plaintiff's grip strength was 75-80-80 for his right hand, and 85-85-80 for his left hand. (AR 479.)

In the neurological examination, Plaintiff was alert and oriented to date, year, page, and person, with memory registration of 3/3. (AR 479.) He was observed as having normal bulk and tone throughout, and full 5/5 power in his four extremities as to his motor abilities. He had no involuntary muscle contractions, tremor, or drift. (AR 479.) His reflexes were symmetric and brisk, and his senses were normal with the exception of the left lower extremity which had reduced sensation to light touch and pinprick. (AR 480.) Plaintiff had a negative Romberg test.[1] With respect to coordination, Plaintiff had an intact finger-to-nose test. He also had normal casual gait, normal heel and toe walk, and intact tandem gait. (AR 480.) Based on the examination, Dr. Cholfin found that Plaintiff could lift and carry 50 pounds occasionally and 20 pounds frequently, could stand and walk for less than two hours in an eight-hour day with normal breaks, could sit without restriction, and had exertional limits with respect to climbing, stooping, kneeling, balancing, crouching, crawling, pushing, pulling, reaching, feeling, fingering, and gross handling. (AR 480.)

On October 29, 2013, agency medical consultant Joan Bradus, M.D. reviewed the medical records and observed that the MRI of Plaintiff's neck shows plaque consistent with MS. (AR 75.) There were also multiple plaques in the brain. (AR 75.) Dr. Bradus found that there was a slow progression of symptoms, and that exam findings were relatively unchanged over the past two years except that symptoms of fatigue and numbness had worsened. Dr. Bradus explained that Dr. Cholfin's exam findings showed normal gait and strength except some increased hyperreflexia, good grip strength, and normal balance but decreased sensation in the lower left extremity. She opined that Dr. Cholfin's opinion should be given little weight because it was based on subjective reports of symptoms and limitations, and was not supported by the totality of evidence. (AR 79.) Dr. Bradus also noted that Dr. Cholfin's opinion contained inconsistencies, and was based only on a snapshot of Plaintiff's functioning. (AR 79.) Dr. Bradus assessed that Plaintiff was limited to lifting 20 pounds occasionally and 10 pounds frequently, and could stand or walk for six hours in an eight-hour day and sit for six hours in an eight-hour day. (AR 77.)

---

[1] A positive Romberg tests indicates unsteadiness on the feet. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005)

In December 2013, Plaintiff reported that his right hand was more numb and dropping things. (AR 530.)

On February 19, 2014, agency medical consultant J. Mitchell M.D. reviewed the medical records. (AR 90.) Dr. Mitchell noted that in the August 2011 neurological evaluation, there was no fatiguing of strength over 1.5 minutes of testing. In June 2013, Plaintiff was noted as having normal motor, gait, and cerebellar functions despite complaints by Plaintiff and his wife about his vision, balance, and weakness. In August 2013, MRIs of Plaintiff's brain and C-spine were found to be stable to slightly better, and an examination indicated intact cerebellar, gait, heel/toe walk, and gross memory. In October 2013, the neurological examination included normal motor, gait, heel and toe walk, and tandem gait. In December 2013, the neurological exam was unchanged. In January 2014, Plaintiff noted that he could no longer ski or play softball. In February 2014, Plaintiff indicated activities of daily living ("ADLs") of shopping, driving, driving his children to places, caring for pets, and light household chores. (AR 90.) Based on these medical records, Dr. Mitchell found there were no significant changes in the physical finding, and that the evidence continued to support a light residual functional capacity ("RFC") with sustainability and fatigue considered. (AR 90.)

On March 28, 2014, Plaintiff stated that he had been feeling worse for the last two months, and was having more difficulty getting out of chairs and walking. (AR 620.) Plaintiff also stated that he'd had a few falls.

On December 5, 2014, Plaintiff had an office visit with his treating neurologist since 2006, Ann Bebensee, M.D. (AR 598.) Plaintiff stated that he had noticed progression in his symptoms, including a spell two weeks prior where he was unable to lift his left arm, increasing difficulty with balance, and increasing memory problems. (AR 599.) Plaintiff also reported that he was feeling more depressed and might be having panic attacks. (AR 599.) During his examination, Plaintiff's sternocleidomastoid and trapezius muscle strength was normal, and his motor skills had normal tone, bulk and strength. (AR 600.) Plaintiff's cerebellum was intact and his gait was normal. (AR 600.)

On December 10, 2014, Dr. Bebensee wrote a letter stating that Plaintiff had been

4

diagnosed with MS, and that he suffered from continuous severe fatigue and pain. (AR 542.) Dr. Bebensee also stated that Plaintiff was developing memory loss. Dr. Bebensee opined that the disabilities would not improve, and that Plaintiff was permanently disabled. (AR 542.)

On January 8, 2015, Plaintiff had an office visit with Dr. Bebensee, where he reported that he was doing better. (AR 670.) On February 12, 2015, Plaintiff's wife had a telephone call with Dr. Bebensee, in which she stated that things were going well. (AR 683.) On March 12, 2015, Plaintiff had a telephone call with Dr. Bebensee in which he stated he was doing well. (AR 692.)

On April 2, 2015, Plaintiff had an office visit with Dr. Bebensee, where he reported increasing difficulty with coordination and balance, as well as increasing memory problems. (AR 695.) Plaintiff reported that antidepressants had helped with his panic attacks. (AR 695.) Plaintiff's physical examination showed diminished facial sensation on the left side, but intact upper and lower facial strength. (AR 695-96.) Plaintiff's sternocleidomastoid and trapezius muscle strength was normal, but his motor skills fatigued to 80% on 10 repetitions of deltoid strength. (AR 696.) His cerebellum was intact and his gait was normal. (AR 696.) Plaintiff was diagnosed with myelopathy (spinal cord compression) secondary to his MS. (AR 696.)

That same day, Dr. Bebensee completed several evaluations regarding Plaintiff's functional capacity. (AR 651-60.) Dr. Bebensee opined that Plaintiff could walk/stand for one hour a day during an eight-hour day, and sit for three hours a day. (AR 651.) Dr. Bebensee also found that Plaintiff could not perform fine manipulation or repetitive motion. (AR 651.) Dr. Bebensee further opined that Plaintiff could frequently carry 5 pounds, occasionally carry 10 pounds, and never carry anything more. (AR 652.) Plaintiff could also never climb, balance, stoop, kneel, crouch, crawl, or reach above shoulder level. (AR 652.) Dr. Bebensee also stated that Plaintiff suffered from fatigue due to MS, and that his fatigue was disabling and would prevent Plaintiff from working full-time at even a sedentary position. (AR 653.) Dr. Bebensee further stated that Plaintiff suffered from pain due to a cervical cord lesion, and that the pain would prevent Plaintiff from working full-time at even a sedentary position. (AR 654.) Plaintiff's pain would also cause a significant handicap with sustained attention and concentration that would eliminate skilled work tasks. (AR 655.) Dr. Bebensee opined that Plaintiff had significant disorganization of motor

function in two extremities due to a cervical spine lesion that affected both arms and legs, resulting in sustained disturbance of dexterous movements, or gait and station. (AR 656.) In support, Dr. Bebensee pointed to an MRI with large cervical spine lesions. (AR 656.) Finally, Dr. Bebensee found that Plaintiff was moderately limited in his ability to remember locations and work-like procedures, understand and remember very short and simple instructions, understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a regular schedule and maintain regular attendance, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, or set realistic goals. (AR 657-58.)

On June 22, 2015, Plaintiff had an office visit in which he reported a rash. (AR 715.) Plaintiff's appearance was well-appearing and in no distress, and he was alert and oriented. (AR 715.) On December 14, 2015, Plaintiff reported another rash, which he noted after he was invited to cut wood with a friend. (AR 738.) Plaintiff noted no other problems.

On January 8, 2016, the ALJ held a hearing. (AR 33.) At the hearing, Plaintiff testified that he had not worked since June 23, 2013. (AR 39.) Plaintiff stated that he could not use his left hand as much, that he did not think like he used to, and that he had a hard time finishing a task that he was supposed to do. (AR 39.) Plaintiff explained that he had stopped working because he could not take care of orders and write schedules, was always late, and was always dropping his knife. (AR 40.) Plaintiff testified that medication was his only treatment, and that his medications were effective. (AR 40-41, 53.) Plaintiff noted that he had gotten rashes, but the doctors had not determined which medications were causing the rashes. (AR 41.)

Plaintiff further stated that he could dress and bathe himself without help on certain days, and that his wife sometimes helps put on his shoes and socks. (AR 43.) Plaintiff's wife also sometimes helps him get out of bed. (AR 43.) Plaintiff's wife and adult daughter prepared meals, and Plaintiff helped clean and vacuum occasionally. (AR 44.) Plaintiff would also go with his family to do shopping. Plaintiff mostly spent his time staying at home and trying to work out on a treadmill twice a week for thirty to sixty minutes. (AR 44.) Plaintiff watched television for about six hours a day. (AR 45.) Plaintiff stated he could walk for about thirty minutes before he would

6

have to catch his breath and balance himself, before walking again. (AR 45.) Plaintiff testified that he had problems with his hands, and would drop things because his fingers would get numb. (AR 46.) Plaintiff stated he could bend his wrist and squat, and that the heaviest thing he would lift is a gallon of milk. (AR 47.)

Plaintiff also testified to concentration problems where instead of trying to do one task, it would take him a while because he would do other things instead. (AR 48.) Plaintiff stated he would trip almost once a day and fall to the ground about once a month. (AR 50.) Plaintiff stated he would use his phone to text his children or look something up, and would not get on a computer at all. (AR 51.) Plaintiff rated his usual pain as a seven out of ten, and testified that he would nap during the day. (AR 52.) Plaintiff further testified that he had seen a psychiatrist several times, and was given anti-depressants and Xanax, but could not identify his psychiatrist. (AR 53-54.)

Following a hearing, the ALJ rejected Plaintiff's application on March 28, 2016. (AR 16-26.) A request for review of the ALJ's decision was filed with the Appeals Council on May 19. 2016. (AR 200.) The Appeals Council denied Plaintiff's request for review on July 21, 2017. (AR 7.) On December 12, 2017, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

On May 31, 2018, Plaintiff filed his motion for summary judgment. (Plf.'s Mot., Dkt. No. 15.) On June 15, 2018, Defendant filed its opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 16.) On June 28, 2018, Plaintiff filed his reply. (Plf.'s Reply, Dkt. No. 17.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the

1  Court must consider the evidence as a whole, weighing both the evidence that supports and the
2  evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible
3  to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r
4  of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III. THE ALJ'S DECISION

On March 28, 2016, the ALJ issued an unfavorable decision. (AR 16-26.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 23, 2013,

the alleged onset date, other than income from a 401(k) account. (AR 18.)

At step two, the ALJ identified the following severe impairment: MS. (AR 18.) The ALJ noted that Plaintiff had depression, but that his depression did not cause more than minimal limitation on his ability to perform basic mental work activities, and was therefore non-severe. (AR 19.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 19.)

At step four, the ALJ determined that Plaintiff had the RFC to perform light work. (AR 20.) Specifically, Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, could stand and/or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday with normal breaks. Plaintiff could never climb ladders, ropes, and scaffolds, and occasionally climb ramps and stairs. He could frequently balance, stoop, crouch, and crawl, but had to avoid moderate exposure to extreme temperatures and concentrated exposure to hazards. (AR 20.)

The ALJ found that Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical findings or medical source opinions. (AR 21-22.) With respect to Plaintiff's testimony, the ALJ noted that Plaintiff had traveled out of town since the alleged onset date. (AR 21.) The ALJ also found that Plaintiff had earned some income in 2014, which while not constituting disqualifying substantial gainful activity, did indicate that Plaintiff's daily activities were at times greater than admitted. (AR 21.)

Next, the ALJ found that the objective clinical findings did not support the limitations alleged. (AR 22.) While Plaintiff had received treatment for MS, the ALJ observed that the June 2013 MRI of Plaintiff's brain and cervical spine showed stable appearance of numerous MS plaques in the brain, except for resolution of enhancement at the focus located at the right posterior corpus callosum and appearance of slight enhancement at the left superior frontal periventricular area. (AR 22.) The MS plaques in Plaintiff's cervical cord also had stable appearance with no enhancement. (AR 22.) The ALJ also noted that on June 21, 2013, Plaintiff

had complained of muscle spasms, difficulty with short-term memory, holding his knife, and gait instability, but that his gait and neurological examinations were normal except for diminished sensation of vibration of the left foot. (AR 22.) Likewise, the ALJ observed that on December 5, 2014, Plaintiff reported a spell in which he was unable to lift his left arm, but that his neurological exam was normal and his left arm weakness had resolved. (AR 22.) Further, Plaintiff reported that his medications helped his symptoms. (AR 22.)

With respect to the medical opinions, the ALJ gave Dr. Cholfin's opinion about Plaintiff's RFC little weight because it was inconsistent with the objective evidence and apparently based on Plaintiff's self-reported symptoms and limitations. (AR 23.) The ALJ pointed to the slow progression of symptoms in the past year, and the relatively unchanged examination findings despite fatigue and numbness worsening. (AR 23.) The ALJ also explained that Dr. Cholfin's examination found normal gait and strength, good grip strength, and normal balance other than slightly decreased sensation in the left leg, which did not support Dr. Cholfin's RFC assessment. (AR 23.)

Next, the ALJ gave Dr. Bradus's and Dr. Mitchell's opinions about Plaintiff's RFC great weight because they were consistent with the medical record and evidence of record. (AR 23.)

The ALJ then reviewed Dr. Bebensee's opinions. First, the ALJ gave Dr. Bebensee's December 2014 opinion about Plaintiff being permanently disabled no weight because the opinion was "a conclusory statement regarding 'disability,' in other words, an opinion on an issue reserved to the Commissioner." (AR 23.) Further, the clinical examination findings did not support the opinion. Second, the ALJ gave Dr. Bebensee's April 2, 2015 opinions about Plaintiff's physical capabilities no weight because it was unsupported by Dr. Bebensee's clinical findings, which did not consistently show abnormal findings lasting continuously for very long. (AR 23.) The ALJ pointed to Plaintiff's reported exacerbation of symptoms in March and December 2014, as well as April 2015. (AR 23-24.) Third, the ALJ gave Dr. Bebensee's April 2, 2015 opinions about Plaintiff's fatigue and pain no weight because they were unsupported by the clinical findings. (AR 24.)

In addition to not being supported by the clinical findings, the ALJ stated that Dr.

Bebensee's opinions were inconsistent with Dr. Cholfin's findings and Dr. Bradus's and Dr. Mitchell's opinions. (AR 24.) The ALJ pointed to Dr. Cholfin's examination, which found Plaintiff's grip strength to be good, his memory intact, his reflexes symmetric and brisk, his sensation normal except his left leg, his casual gait normal, his normal heel and toe walk normal, and his tandem gait normal. Further, the medical consultants' opinions contradicted her opinion that Plaintiff was incapable of even sedentary activity, and Plaintiff's ability to travel out of town and help cut wood were inconsistent with her opinion. (AR 24.)

Finally, the ALJ gave little weight to the statements of Plaintiff's wife. (AR 24.) While her statements regarding Plaintiff's activities of daily living and functional limitations were generally consistent with Plaintiff's statements, they were inconsistent with the objective medical evidence and the medical consultants' opinions. (AR 24.)

At step five, the ALJ found that Plaintiff was unable to perform his past relevant work as a manager of meat sales. (AR 24.) The ALJ found, however, the Plaintiff was capable of performing other jobs, including a cashier, packer, and office helper. (AR 25.) Based on the number of jobs available, the ALJ concluded that Plaintiff was not disabled. (AR 26.)

## IV. DISCUSSION

In his motion for summary judgment, Plaintiff argues that the ALJ erred because: (1) the ALJ incorrectly assessed the medical opinions, (2) the ALJ incorrectly evaluated Plaintiff's credibility, (3) the ALJ failed to consider the lay testimony of Plaintiff's wife, and (4) the ALJ should have fully developed the record as to the exertional limits proposed by Dr. Cholfin and Plaintiff's mental limitations.

### A. Weight of the Medical Evidence

The ALJ afforded great weight to the opinions of the non-examining medical consultants Dr. Bradus and Dr. Mitchell, little weight to the opinion of consultative examiner Dr. Cholfin, and no weight to the opinion of treating physician Dr. Bebensee. (AR 23-24.)

The court "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

11

physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.3d 1391, 1396 (9th Cir. 1991)). If a treating physician's medical opinion is contradicted by another doctor, the ALJ must identify specific legitimate reasons supported by substantial evidence. *Id.*

### i. Dr. Bebensee

Plaintiff argues that the ALJ erred by giving no weight to Dr. Bebensee's opinions. (Plf.'s Mot. at 14.) First, he challenges the ALJ's finding that Dr. Bebensee's opinions were inconsistent with her and Dr. Cholfin's clinical findings because the physical examinations found numbness or abnormal sensation, which could cause difficulty with fine manipulation or repetitive motions but would not impact his grip strength during one test. (*Id.*) Plaintiff also argues that none of the physical examinations tested his ability to sustain movement, and were, therefore, not inconsistent with opinions that his pain and fatigue would impact his ability to persist at physical activities for more than an hour. (*Id.* at 14-15.)

The Court rejects this argument. Dr. Bebensee's clinical findings consistently found normal memory, comprehension, strength, and gait, as well as typically normal motor skills, even around the time of Dr. Bebensee's opinions about Plaintiff's RFC. (AR 620 (March 28, 2014 clinical findings of normal comprehension, intact memory, normal sternocleidomastoid and trapezius strength, normal tone and bulk with 5/5 strength in motor, and normal gait); 599-600 (December 5, 2014 clinical findings of okay comprehension, normal sternocleidomastoid and trapezius strength, normal tone and bulk with 5/5 strength in motor, normal gait, and intact cerebellum); 695-96 (April 2, 2015 clinical findings of intact comprehension and memory, normal sternocleidomastoid and trapezius strength, intact cerebellum, and normal gait, with fatiguing to 80% on ten repetitions of deltoid strength). The ALJ also noted that Dr. Bebensee's clinical findings did not consistently show abnormal findings lasting continuously for very long, pointing to temporary symptoms of Plaintiff not being able to move his arm which resolved itself in

12

December 2014, and exacerbation of symptoms in March 2014 and April 2015. (AR 23-24.) notably, these periods of abnormal findings were followed by Plaintiff stating that he was doing well, or seeing Dr. Bebensee for rashes but making no complaints of other symptoms related to his grip, fatigue, or pain. (AR 670 (January 8, 2015 Plaintiff's report that he was feeling better), AR 683 (February 12, 2015 Plaintiff's wife's report that things are going well); AR 692 (March 12, 2015 Plaintiff's report that he was doing well); AR 715 (June 22, 2015 office visit for a rash but no other problems reported); AR 738 (December 14, 2015 office visit for a rash, but no other problems reported).)

Likewise, Dr. Cholfin's examination findings were inconsistent with Dr. Bebensee's opinion that Plaintiff was incapable of even sedentary activity, given his good grip strength, intact memory, 5/5 strength in all extremities, normal gait and walk, and normal sensation with the exception of the left leg, which had reduced sensation to light touch. (AR 24.) Additionally, while Plaintiff suggests that numbness in the tips of his fingers could cause difficulty with fine manipulation or repetitive motion but would not impact his grip strength, Plaintiff points to no records showing any numbness in his fingers; indeed, none of the exams found abnormal sensation in his fingers. (*See* AR 386-87 (August 15, 2011 finding of normal sensation in upper extremities); AR 480 (Dr. Cholfin's findings of normal sensation except in the left lower extremity). Plaintiff has also made no showing that the various exams conducted would not be relevant to sustained movement, or pointed to authority that the ALJ could not consider these examinations in determining consistency with medical opinions. The Court concludes that the ALJ gave specific and legitimate reasons supported by substantial evidence in rejecting Dr. Bebensee's opinion based on the inconsistency with Dr. Bebensee's and Dr. Cholfin's clinical findings.

Second, Plaintiff argues that the ALJ erred in pointing to Plaintiff's ability to travel out of town and help cut wood as inconsistent with Dr. Bebensee's opinions. (Plf.'s Mot. at 15.) The Court agrees that these two activities are not necessarily inconsistent with Dr. Bebensee's opinions because there is no information about the extent of these activities, and how much they exerted Plaintiff. Any error related to this, however, is harmless because as discussed above, the ALJ gave

13

specific and legitimate reasons for rejecting Dr. Bebensee's opinion.

Third, Plaintiff contends that the ALJ could not simply rely on the medical consultants' different opinions because the "'opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" (Plf.'s Mot. at 15 (quoting *Lester*, 81 F.3d at 831).) Here, the ALJ did not rely solely on the medical consultants' different opinions because, again, the ALJ gave additional reasons including the inconsistency with the clinical findings. Courts have upheld an ALJ's "decision to reject the opinion of a treating or examining physician based in part on the testimony of a nonexamining medical advisor." *Lester*, 81 F.3d at 831.)

Accordingly, the Court finds that the ALJ did not err in rejecting Dr. Bebensee's opinion.

### ii. Dr. Cholfin

Plaintiff challenges the ALJ's decision to give little weight to Dr. Cholfin's opinion, arguing that the ALJ relied on the opinion of the medical consultant. (Plf.'s Mot. at 16.) Plaintiff is incorrect. While the ALJ cited to the opinion of the medical consultant in his finding that Dr. Cholfin's opinion was based solely on Plaintiff's self-reported symptoms and limitations, he also explained that Dr. Cholfin's opinion was inconsistent with the objective evidence. (AR 23.) This evidence included Dr. Vesali's 2011 findings and the slow progression of symptoms over the past years, along with relatively unchanged examination findings over the past two years. (AR 23.) The ALJ also noted that Dr. Cholfin's own examination findings showed normal gait and strength, good grip, and normal balance, and that such findings were inconsistent with his opinion. (AR 23.) The Court concludes that the ALJ did not err in giving little weight to Dr. Cholfin's opinion.

### iii. Dr. Bradus and Dr. Mitchell

Finally, Plaintiff argues that the ALJ should not have given great weight to Dr. Bradus's and Dr. Mitchell's opinions because there was no evidence of their qualifications and the ALJ did not explain what evidence outside of the medical records was consistent with their opinions. (Plf.'s Mot. at 16.) Plaintiff provides no authority that an ALJ must obtain evidence of the state agency medical consultant's qualifications, or that the ALJ must cite to evidence outside of the medical records. Further, the Ninth Circuit has found that "where the ALJ relied on a

nonexamining source's testimony on limitations to reject the opinion of the claimant's treating physician, the report of a nonexamining, nontreating physician need not be discounted when it is not contradicted by *all other evidence* in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (internal quotation omitted). Indeed, "[r]eports of consultative physicians called in by the Secretary may serve as substantial evidence," and "the analysis and opinion of an expert selected by the ALJ may be helpful to the ALJ's adjudication . . . ." *Id.* Thus, the Ninth Circuit has declined "to hold that a nonexamining medical advisor's statements inevitably deserve 'little' or no weight." *Id.*

Such is the case here. Plaintiff primarily argues that the medical consultants' opinions should not be entitled to great weight because they were not consistent with Dr. Bebensee's and Dr. Cholfin's opinions, but as discussed above, the ALJ gave specific and legitimate reasons in giving little or no weight to those opinions. Moreover, the ALJ did not simply state that the medical consultants' opinions were the most consistent with the objective medical evidence; the ALJ explained that the medical record showed stable appearance of the plaques and only slight enhancement, and the examination findings were relatively unchanged over the prior two years. (AR 22-23.) Thus, the ALJ did not err in assigning great weight to Dr. Bradus's and Dr. Mitchell's opinions.

### B. Plaintiff's Credibility

Next, Plaintiff argues that the ALJ erred by not providing clear and convincing reasons in giving Plaintiff's statements about his symptoms little weight. In evaluating a claimant's testimony regarding subjective pain or other symptoms, an ALJ must engage in a two-step inquiry. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). An ALJ must first "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotations and citations omitted). At this step, a claimant need not show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (internal quotation and citations omitted). Next, if a claimant meets this first prong and there is

15

no evidence of malingering, the ALJ must then provide "specific, clear, and convincing reasons" for rejecting a claimant's testimony about the severity of her symptoms. *Id.*

Plaintiff argues that the ALJ erred in his determination that Plaintiff's daily activities were somewhat greater than Plaintiff's testimony. (Plf.'s Mot. at 19.) The ALJ relied on Plaintiff having traveled out of town since the alleged onset date, as well as his earning $2,413.62 in 2014. (AR 21.) The Court agrees that these are insufficient reasons for rejecting Plaintiff's testimony. The ALJ does not explain why travel out of town is inconsistent with Plaintiff's testimony, particularly when there is no information as to how extensive that travel was. As for the 2014 earnings, the earnings were from a 401(k) account; thus, there is no showing why such earnings impact Plaintiff's daily activities. (*See* AR 18.) The Court concludes these are not specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

More significantly, the Court also finds that the ALJ erred by not specifically identifying which of Plaintiff's statements he found not credible and why. The Ninth Circuit has found error where an ALJ concluded that a claimant's functional limitations were less serious than alleged "based on unspecified claimant testimony and a summary of medical evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Specifically, the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' [the court] must have in order to review the ALJ's decision meaningfully, so that [the court] may ensure that the claimant's testimony was not arbitrarily discredited." *Id.* at 494.

Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical findings or medical source opinions, but did not identify which of Plaintiff's statements specifically was inconsistent with which medical findings or opinions. Instead, as in *Brown-Hunter*, the ALJ made the credibility finding before summarizing the medical evidence supporting the RFC determination. (*See* AR 21-24.) This failure to identify specific testimony and explain the inconsistencies constitutes error that prevents the Court from "discern[ing] the agency's path because the ALJ made only a general credibility finding without providing any reviewable reasons why [he] found [Plaintiff's]

16

testimony to be not credible. . . . [P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony is not credible." *Brown-Hunter*, 806 F.3d at 494.

### C. Lay Testimony

Plaintiff also argues that the ALJ erred in rejecting the lay testimony of Plaintiff's wife. (Plf.'s Mot. at 21.) "Lay testimony as to a claimant's *symptoms* is competent evidence which the secretary must take into account, unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (internal citations omitted).

Here, the ALJ noted that Ms. Reyna's testimony was "generally consistent with statements made by the claimant," but rejected her statements "due to their inconsistency with the objective medical evidence and the state agency consulting doctors' medical opinions." (AR 24.) "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Further, as Defendant points out, Ms. Reyna wrote that Plaintiff had memory loss, could not concentrate, and had difficulty with balance. (AR 309 (stating Plaintiff "has no balance"), 311 (stating Plaintiff cannot concentrate and has to be reminded of things often), 317 (stating Plaintiff's balance is "off almost all day")).) Medical records, however, showed normal mental status with normal memory and comprehension, as well as normal gait. (*E.g.*, AR 411 (memory grossly intact), 436 (memory grossly intact, comprehension okay, normal gait), AR 479-480 (memory registration of 3/3, normal gait, and full 5/5 power in four extremities), AR 695-96 (comprehension and memory grossly intact, normal gait).) Accordingly, the Court concludes the ALJ did not err in rejecting Ms. Reyna's testimony.

### D. Developing the Record

Finally, Plaintiff argues that the ALJ failed to fully develop the record because he did not obtain medical expert testimony or request a psychiatric consultative examination. (Plf.'s Mot. at 21.) An ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)

(internal quotation omitted). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.* (internal quotation omitted).

Here, Plaintiff contends that the nature of Plaintiff's impairment is such that he experienced mental limitations, such that the ALJ should have had Plaintiff attend a psychiatric consultative examination to determine if there were mental effects of his MS. (Plf.'s Mot. at 22.) Plaintiff, however, fails to show how there was ambiguous evidence or an inadequate record. Dr. Bebensee opined to greater mental limitations than the ALJ found, but as discussed above, the ALJ explained why he rejected her opinion. In February 2014, consultative physician Dr. Andres Kerns found only mild mental limitations indicating a non-severe mental impairment. (AR 91.) The Court finds that Plaintiff has not shown that the ALJ erred by not requiring a psychiatric consultative examination.

Next, Plaintiff argues that the ALJ should have asked for further clarification as to Dr. Cholfin's opinions on Plaintiff's limitations. (Plf.'s Mot. at 22.) Even if true, however, Plaintiff does not explain how any change to Dr. Cholfin's opinion would affect the ALJ's determination given the ALJ's conclusion that Dr. Cholfin's opinion was entitled to little weight. Accordingly, the Court finds that any error was harmless.

## V. CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. The Court remands the case for further proceedings consistent with this order, specifically the credibility findings as to Plaintiff's testimony.

IT IS SO ORDERED.

Dated: March 27, 2019

_____
KANDIS A. WESTMORE
United States Magistrate Judge